UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09cv553-W-2
(3:06cr391-4-W)


STERLING RAPHAEL ROSEBORO,   )
                                 )
       Petitioner,           )
                                 )
         v.               )          **O R D E R**
                                 )
UNITED STATES OF AMERICA,    )
                                 )
       Respondent.         )
_____)


     **THIS MATTER** is before the Court on Petitioner's Motion pursuant to 28 U.S.C. § 2255

to Vacate, Set Aside, or Correct Sentence, filed December 31, 2009 (Doc. No. 1); Respondent's

Motion for Summary Judgment, filed April 15, 2010 (Doc. No. 6); Petitioner's Memorandum in

Opposition to Respondent's Motion for Summary Judgment, filed May 7, 2010 (Doc. No. 8);

and Petitioner's supplemental response in opposition to Respondent's Motion for Summary

Judgment, filed September 7, 2010 (Doc. No. 10).

## I. FACTUAL AND PROCEDURAL HISTORY

     On September 28, 2006, a Bill of Indictment was filed charging Petitioner and eight other

persons with numerous violations of federal law.  (Criminal Case No. 3:06cr391-4, Doc. No. 1).

Relevant here, Count One charged Petitioner with conspiring to possess with intent to distribute

at least 50 grams of cocaine base and at least 500 grams of cocaine powder in violation of 21

U.S.C. §§ 841(b)(1)(A) and 846; Count Three charged him with possession with intent to

distribute cocaine powder and aiding and abetting that offense in violation of 21 U.S.C. §§

1

841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2; Count Four charged him with possession with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); Count Five charged him with possession with intent to distribute cocaine powder and aiding and abetting that offense in violation of 21 U.S.C. §§ 841 (a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2; and Count Six charged him with possession with intent to distribute at lease 50 grams of cocaine base and aiding and abetting that offense in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2.  (Id.).

On November 9, 2007, the parties filed a Plea Agreement wherein Petitioner agreed to plead guilty to Count One in exchange for Respondent's promise to dismiss the remaining charges.  (Criminal Case No. 3:06cr391, Doc. 123 at ¶¶ 1-2).  The Plea Agreement also contains the parties' stipulation that Petitioner could be held accountable for at least 50 grams but less than 150 grams of cocaine base and at least 100 grams but less than 200 grams of cocaine powder.  (Id. at ¶ 7(a)).  The Plea Agreement provides that, notwithstanding any recommendations contained therein, if the United States Probation Office determined that Petitioner was subject to sentencing as a career offender, those provisions would be used to determine his sentence.  (Id. at ¶ 7(f)).  In addition, the Plea Agreement contains a waiver provision by which Petitioner relinquished his rights either to directly or collaterally challenge his conviction and sentence on any grounds except ineffective assistance of counsel, prosecutorial misconduct, or on the ground that his sentence was erroneously calculated in contradiction to an explicit stipulation in his Plea Agreement.  (Id. at ¶¶ 20-21).

On November 15, 2007, Petitioner and defense counsel appeared before the Court for his Plea and Rule 11 Hearing.  On that occasion, the Court engaged Petitioner in its standard, lengthy colloquy to ensure that his plea was being freely and intelligently tendered.  (Transcript

of Plea Hearing, filed Sept. 30, 2008 at 4). Petitioner's responses to the Court's numerous questions established, inter alia, that he had received a copy of the Indictment and had discussed its contents with his attorney; he understood those charges, their elements and corresponding penalties; he had been given sufficient time to discuss possible defenses to the charges with counsel; and he and counsel had discussed the Sentencing Guidelines and how the Court might apply them to his case. (Id. at 9-11, 16 and 29). Petitioner's answers further established that he understood the terms of his Plea Agreement as those matters were explained to him on the record, including the rights which he was relinquishing by virtue of the waiver provision set forth therein. (Id. at 20-24 and 27-28). Furthermore, Petitioner remained silent when his attorney affirmed to the Court that he had reviewed the terms of the Plea Agreement with Petitioner and was satisfied that Petitioner understood those matters and knew what he was doing. (Id. at 32).

Petitioner's answers also established that no one had threatened, intimidated or forced him to enter his guilty plea and no one had made him any promises of leniency in order to induce his plea. (Id. at 28-29). The answers also established that Petitioner was tendering his guilty plea because he was guilty of the subject charge, he wanted to plead guilty, and he wanted the Court to accept his plea. (Id. at 5, 19-20 and 31). Last, Petitioner's answers established that he was, at least up to that point, satisfied with the services of his attorney and did not have any questions or comments about the proceeding. (Id. at 29-30). Rather, Petitioner's only question concerned whether he could receive assistance with drug abuse counseling. (Id. at 30). Thereafter, the Court concluded that Petitioner understood all of the relevant issues, including the consequences of his guilty plea and was knowingly and voluntarily entering said plea. (Id. at 32-33). Consequently, the Court accepted Petitioner's plea. (Id. at 33).

3

On May 5, 2008, the U.S. Probation Office filed Petitioner's final Pre-Sentence Report. (Criminal Case No. 3:06cr391, Doc. No. 157). That Report concluded that Petitioner was a career offender by virtue of his prior North Carolina convictions for involuntary manslaughter and two counts of possession with intent to sell and deliver cocaine. Accordingly, Petitioner's total offense level was calculated at 34, his criminal his category was VI and his corresponding range of imprisonment was 262 to 327 months imprisonment. (Id. at ¶¶ 42 and 56).

However, defense counsel filed an objection to that determination, asserting that Petitioner was acting in self-defense when he sustained the qualifying involuntary manslaughter conviction as well as another conviction for assault inflicting serious injury. (Criminal Case No. 3:06cr391, Doc. No. 156). The objection further indicated defense counsel's plan to seek a variance from the application of the career offender guidelines on that basis. (Id.). Counsel attached a 536-page Memorandum containing witness statements and investigative reports relating to Petitioner's manslaughter and assault convictions. (Criminal Case No. 3:06cr391, Doc. No. 164).

On July 8, 2008, Respondent filed a Motion for Downward Departure pursuant to both U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). (Criminal Case No. 3:06cr391, Doc. No. 165). Such Motion asked the Court, on the basis of Petitioner's substantial assistance to authorities, to depart from total offense level 34 down to offense level 30, which yielded a range of 168 to 210 months imprisonment. (Id. at 2-4). The Motion also requested a 196-month term of imprisonment. (Id. at 4).

On July 9, 2008, the Court conducted Petitioner's Factual Basis and Sentencing Hearing. At the outset of that proceeding, Petitioner reaffirmed that he fully understood the Court's questions during his Plea and Rule 11 Hearing and had truthfully answered those inquiries.

4

(Transcript of Sentencing Hearing, filed September 30, 2008 at 2-3). Petitioner also told the Court that the answers he gave during his Plea Hearing and the ones he then was giving all were based on his guilt to the subject conspiracy charge. (Id. at 3). Thus, the Court affirmed the Magistrate Judge's acceptance of Petitioner's plea. (Id. at 3-4). Additionally, based upon the offense conduct as described in the Pre-Sentence Report, on Petitioner's answers and his guilty plea, the Court determined that there was a sufficient factual basis to support Petitioner's plea and conviction. (Id. at 4).

Thereafter, Petitioner affirmed that he had received a copy of his Pre-Sentence Report and understood its contents. (Id. at 5). Defense counsel then conceded that the career offender provisions were applicable and explained that his objection to the Report actually was intended as a request for a downward variance. (Id. at 5-6). Therefore, in the absence of an objection, the Court adopted Petitioner's Pre-Sentence Report along with its sentencing calculations. (Id. at 6). Defense counsel then asserted that notwithstanding Petitioner's manslaughter and drug convictions, the facts underlying those offenses warranted a downward variance because Petitioner may have had a self-defense or imperfect self-defense to the manslaughter charge, and his drug trafficking conviction had involved only .4 grams of cocaine. (Id. at 8-13). Therefore, defense counsel asked the Court to depart from the 196-month term which the Government was requesting down to 120 months. (Id. at 13-14). However, after carefully considering defense counsel's arguments, the Court denied the request, noting that while Petitioner's guilty plea to the manslaughter charge may have been the result of a compromise plea arrangement, his subsequent failure to stay out of trouble justified the Court's decision to allow him to bear the full consequence of having that conviction on his record. (Id. at 19).

Counsel for the Government next advised the Court that although Petitioner had

5

cooperated and provided substantial assistance to authorities, he also continued to sell drugs during the time that he was cooperating, and even fled from authorities once the Indictment was secured. (Id. at 20-24). Nevertheless, the prosecutor advised that he would not withdraw the Motion for Downward Departure, and so the Court granted that Motion. (Id. at 25).

Petitioner then addressed the Court and asked only for mercy. (Id. at 27). Significantly, Petitioner did not complain about his attorney's performance or otherwise call into question the validity of his guilty plea. Thus, after departing down to offense level 30, the Court sentenced Petitioner to 196 months imprisonment. (Criminal Case No. 3:06cr391, Doc. No. 168). After proposing but before imposing sentence, the Court advised the Petitioner that, in consideration for benefits he received for entering into the plea agreement, he waived his right to appeal his conviction and/or sentence on direct appeal or in a separate collateral civil action, except for claims of ineffective assistance of counsel or prosecutorial misconduct. Petitioner acknowledged that he understood the limits on his appeal rights.

In a timely filed appeal Petitioner raised the single claim that this Court erred in finding that his prior manslaughter conviction qualified as a crime of violence under the career offender provisions. United States v. Roseboro, Appellate No. 08-4734 (4ᵗʰ Cir. Feb. 5, 2009). However, Respondent filed a Motion to Dismiss based upon the waiver provision in the Plea Agreement. (Id.). After concluding that Petitioner had knowingly and voluntarily waived his right to appeal and that his proposed sentencing claim fell within the scope of that waiver, the Fourth Circuit Court of Appeals granted Respondent's Motion and dismissed the appeal. (Id.).

On December 31, 2009, Petitioner filed the instant Motion to Vacate. (Doc. No. 1). The Motion argues that defense counsel was ineffective at various stages of the criminal proceedings; and that the prosecutor engaged in two instances of misconduct. (Id. at 4-8). Petitioner also

attached his sworn Declaration to the Motion to Vacate. (<u>Id.</u> at 14-15). Such Declaration essentially reiterates the allegations against counsel as set forth in the Motion to Vacate. (<u>Id.</u>).

On April 15, 2010, Respondent filed an Answer (Doc. No. 5) to Petitioner's Motion. The gist of that Answer is that Petitioner's claims should be rejected because they are conclusory and otherwise belied by either the record evidence or defense counsel's Affidavit. (<u>Id.</u>). Thus, Respondent also filed a Motion for Summary Judgment asserting that it is entitled to judgment as a matter of law. (Doc. No. 6).

On May 7, 2010, Respondent filed a Memorandum/Response in Opposition to Respondent's Motion for Summary Judgment. (Doc. No. 8). There, Petitioner quotes the relevant portions of Rule 56 of the Federal Rules of Civil Procedure, refers to cases which have analyzed that Rule, and then purports to raise several arguments in opposition to Respondent's Motion. (<u>Id.</u> at 1-3). Those arguments include contentions that Respondent should have provided the Court with a copy of his sentencing transcript; there was no factual basis to support his conviction; he "has not been made aware as to the precise nature and/or scope of this alleged 'conspiracy' (listed as count one of the Indictment) to date"; "no motions, filings and/or records of the [trial] court contain even a slight indication of [his] involvement in this alleged conspiracy"; the foregoing omissions are proof of his attorney's ineffective assistance; and trial counsel's Affidavit actually creates a genuine issue of material fact about whether he was ineffective in advising Petitioner to plead guilty to the conspiracy charge. (<u>Id.</u> at 2-4).

Last, on September 7, 2010, Petitioner filed a supplemental response (Doc. No. 10) raising the new argument that the Court was precluded from concluding that he was a career offender under the holding announced in <u>United States v. Begay</u>, 553 U.S. 137 (2008). (<u>Id.</u> at 1). Petitioner response also reports that he recently has filed a collateral action in the State court

7

challenging his prior felony conviction for assault inflicting serious injury on the ground that the record of that proceeding fails to show whether he pled guilty to the misdemeanor or felony version of that offense. (Id.). Petitioner attached copies of certain documents, including an Order granting Petitioner an evidentiary hearing, which Order apparently was entered in the Superior Court of Gaston County on April 30, 2010. (Id. at 3).

Respondent has not filed any additional documents for the Court's consideration. Thus, the Court now has before it all of the parties' arguments.

## II. STANDARD OF REVIEW

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact and it appears that the moving party is entitled to a judgment as a matter of law. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (applying standard to motion to vacate). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

After having carefully considered the arguments and the relevant legal precedent, the Court has determined that Respondent is entitled to judgment as a matter of law. Therefore, for the reasons stated herein, Respondent's Motion for Summary Judgment will be granted and Petitioner's Motion to Vacate will be denied.

## III. DISCUSSION

**A. Petitioner's claims of ineffective assistance of counsel are factually and/or legally baseless.**

8

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687-91 (1984); see also Fields v. Attorney Gen. of State of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). In measuring that performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. A petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins v. Garrison, 725 F.2d 1425, 1430-31 (4th Cir. 1983)). To meet this burden, a petitioner must demonstrate not only "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," but also that "the result of the proceeding was fundamentally unfair or unreliable." Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Strickland, 466 U.S. at 694 and Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

In the instant case, with regard to Petitioner's allegations that counsel was ineffective during the pre-trial and guilty plea phases of a case, he must show that "but for the assertedly ineffective assistance, a reasonable defendant would have insisted on proceeding to trial." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Also, with regard to his allegation that counsel was ineffective at sentencing, Petitioner must, at a minimum, allege facts which establish that his "sentence would have been more lenient" absent counsel's errors. Royal v. Taylor, 188 F.3d 239, 248-49 (4th Cir. 1999). If Petitioner fails to meet his burden of demonstrating prejudice with respect to any of his allegations against counsel, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

9

Case 3:06-cr-00391-FDW    Document 206    Filed 12/22/10    Page 9 of 21

Last, in evaluating post-guilty plea claims of ineffective assistance, statements previously made under oath, particularly those made during a Rule 11 proceeding which affirm an understanding of the proceedings and satisfaction with counsel, are deemed binding in the absence of "clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299, citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). Indeed, such statements "constitute a formidable barrier" to their subsequent attack. Id. at 73-74. In short, once a trial court conducts a Rule 11 colloquy and finds that the plea is being knowingly and voluntarily tendered, absent compelling reasons to the contrary, the validity of the plea and the petitioner's corresponding responses are deemed to be conclusively established. Via v. Superintendent, Powhatan Correctional Center, 643 F.2d 167 (4th Cir. 1981).

### 1. Counsel's alleged pre-trial ineffectiveness

Petitioner argues that counsel was ineffective for failing to subject the Government's case to any adversarial testing by "establishing or attempting to establish . . . an affirmative defense strategy," investigate confidential informants, or establish "any alternative defensive strategies." (Doc. No. 1 at 4). Petitioner also claims that counsel was ineffective for drafting a plea agreement covering the conspiracy charge or for allowing him to plead guilty to that offense. However, Petitioner has failed to forecast any evidentiary support for these allegations.

First, as Respondent points out, Petitioner does not bother to allege what facts or information he believes counsel would have discovered from further investigation. Likewise, Petitioner fails to identify the persons to whom counsel should have spoken or what he believes those persons would have said to counsel. Equally critically, Petitioner fails to explain how any additional information would have impacted his attorney's advice concerning whether it was in his best interest to plead guilty or, in the alternative, how he was harmed by his attorney's pre-

10

trial performance. Therefore, this claim is conclusory and subject to dismissal on that basis.

Second, inasmuch as the foregoing allegations pertain to deficiencies which allegedly occurred prior to Petitioner's entry of his guilty plea, the well-settled principle of waiver stands as a potential bar to these allegations. That is, the law is clear that in many instances a voluntary and intelligent guilty plea may foreclose federal collateral review of allegations of antecedent constitutional deprivations. <u>Fields</u>, 956 F.2d at 1294 (citing <u>Tollett v. Henderson</u>, 411 U.S. 258, 266-67 (1973)). Indeed, in <u>Tollett</u>, the Supreme Court explained that "a guilty plea represents a break in the chain of events which has preceded the criminal process. <u>Tollett</u>, 411 U.S. at 267. As a result, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." <u>Id.</u> Under those circumstances, the relevant inquiry becomes whether the guilty plea was intelligently and freely entered. <u>Id.</u>

Notably, Petitioner does not point to any evidence in the record or elsewhere to establish that his guilty plea was not knowingly and voluntarily entered. On the contrary, the record of the sworn declarations which Petitioner made to the Court during his plea proceeding tends to establish that he freely and knowingly entered the plea. As was noted, Petitioner's sworn declarations establish, <u>inter alia</u>, that prior to entering his plea he reviewed the charges, their elements and corresponding penalties with counsel, and understood all of those matters. The record further shows that Petitioner discussed possible defenses with counsel; that his guilty plea was not the result of any threat, coercion inducement and/or promise of leniency; that he understood the rights which he was relinquishing by virtue of his plea; and that he admitted his

guilt to the charge. Equally revealing, the record shows that Petitioner told the Court that he was satisfied with his attorney's services, and on the occasions during his Plea and Sentencing Hearings when he was given an opportunity to freely address the Court, Petitioner did not raise a single complaint against counsel's performance. Petitioner's unrebutted declarations that his guilty plea was knowingly and freely entered are entitled to a presumption of verity and are binding upon him. Thus, on this record the Court must conclude that the guilty plea is valid and enforceable, and that Petitioner's challenges to his attorney's pre-trial conduct are barred by entry of that plea.

Plaintiff's first claim also alleges that counsel should not have counseled him to plead guilty to the conspiracy charge because there was no evidence to support that charge. (Doc. No. 1 at 4 and Doc. No. 8 at 2-3). However, the Court finds that the record is replete with evidence of Petitioner's involvement in the subject conspiracy. Indeed, as the Court already has noted, at his plea hearing Petitioner swore that he was guilty of the charge, and at his sentencing he re-admitted that he was guilty of the charge. Moreover, Petitioner's Pre-Sentence Report chronicles his involvement with numerous drug transactions that were connected to the conspiracy. Such Report shows that Petitioner participated in at least three undercover drug deals involving his co-conspirators. (Id.). On the first occasion, Petitioner provided a middle man, co-conspirator Tommy Eugene Hall , with 55.9 grams of powder cocaine which, in turn, was sold to a confidential informant; on the second occasion, Petitioner provided Hall with 55.7 grams of powder cocaine, which also was sold to the informant; and on the third occasion, Petitioner provided Hall with 54.2 grams of cocaine base which, again, was sold to the informant. (Criminal Case No. 3:06cr391-4, Doc. No. 157 at 5-7).

The Report further reflects that on an occasion when Petitioner was arrested and found in

12

possession of 31.2 grams of crack cocaine, cash and marijuana, he admitted that he trafficked in cocaine powder and cocaine base; and that he received his drugs from co-conspirator Cornelius Duff.  (Id. at 6).  During a subsequent interview Petitioner stated that he also received some of his drugs from Mark Sanders, another conspiracy member.  (Id. at 7-8).  Subsequently, Petitioner arranged and consummated three undercover purchases of cocaine powder and cocaine base from Duff and one such purchase from Sanders.  (Id. at 8-10).  Those transactions each involved from two to four ounces of drugs.  (Id. at ).  Upon his arrest, Duff admitted that he supplied Petitioner with drugs to sell; and that he was being supplied by Clarence Adams who also was charged in this conspiracy.  (Id. at 10).  Duff also stated that Petitioner and co-conspirator Sanders occasionally delivered the drugs to him from Adams.  (Id.).

Ultimately, therefore, based upon all of the foregoing, there is no basis for the Court to conclude that but for the assertedly ineffective assistance, a reasonable defendant in Petitioner's position would have insisted on proceeding to trial.  The foregoing information was more than ample proof of Petitioner's complicity in the charged conspiracy.  Therefore, Petitioner's allegations that his counsel failed adequately to investigate and to prepare a defense, and that counsel erroneously allowed him to plead guilty to an unsubstantiated conspiracy charge must be rejected.

### 2.  Counsel's alleged ineffectiveness during entry of the guilty plea

Petitioner's second claim is far less clear.  In his Motion to Vacate, Petitioner alleges that "counsel was ineffective during plea bargaining stage (i.e. drafting and plea hearing)."  (Doc. No. 1 at 5).  In support of the claim Petitioner alleges:

> Partially due to counsel[']s initial failure(s), my 6th Amendment rights w[]ere "obviously" compromised.  Hence, the plea of guilty to (1) a drug conspiracy, given its particular elements, hardly

amount to a bargain and was unfavorable. (ii) Moreover, due to counsel['s] inferred representation of conflicting interest, at least at this point, counsel did not oppose the court[']s failure to explain the particulars of my plea.

After a careful reading of the above language along with Petitioner's Declaration, it appears to the Court that Petitioner is alleging that his attorney was ineffective for advising him to accept the Plea Agreement's waiver provision and for failing to ensure that the Court reviewed the terms of that provision with him. Nevertheless, Petitioner has failed to demonstrate an entitlement to relief on either allegation.

The law is clear that defendants properly may waive their rights to contest their convictions or sentences in collateral proceedings under § 2255, "so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220-21 (4th Cir. 2005) (joining several other circuits and holding, for the first time, that a defendant may waive in plea agreement the right under § 2255 to attack his conviction and sentence); see also, United States v. Cannady, 283 F.3d 641, 645 (4th Cir. 2002) (observing that courts generally have enforced waivers of collateral review rights); United States v. Cohen, 459 F.3d 490, 493-95 (4th Cir. 2006) (enforcing waiver of right to direct appeal); and United States v. General, 278 F.3d 389, 399-01 (4th Cir. 2002) (rejecting claims which came within the scope of appellate waiver).

Such waiver provision, which the Fourth Circuit already has concluded is valid and fully enforceable, United States v. Roseboro, Appellate No. 08-4734 (4th Cir. Feb. 5, 2009), was counter-balanced by several significant concessions from the Government. That is, by agreeing to the subject Plea Agreement with its waiver provision, Petitioner secured a three-point reduction in his offense level for his acceptance of responsibility; he avoided the possibility of a sentence enhancement under 21 U.S.C. § 851; he avoided prosecution on the other four

14

substantive drug trafficking charges he was facing; he limited his sentencing exposure by virtue of the stipulation in the Agreement; and he was able to secure a promise from the Government to seek a downward departure in the event it was determined that he had rendered substantial assistance. As is apparent, the foregoing concessions proved invaluable to Petitioner as they ultimately decreased his statutory exposure of 20 years to life imprisonment and his Guidelines exposure of 360 months to life imprisonment down to 168 to 210 months. Thus, Petitioner's claim that counsel should not have allowed him to agree to the waiver provision is patently frivolous and belied by the record.

Petitioner's other claim that counsel failed to ensure that the Court review the waiver provision with him also is frivolous. Indeed, it has not escaped the Court's attention that Petitioner is not contending that he was unaware of the waiver provision but rather that counsel should have ensured that the Court review the provision with him. Likewise, Petitioner does not direct the Court's attention to any additional matters which he believes would have been disclosed had the Court done its own separate review of the waiver provision with him. Therefore, in the absence of an explanation as to how Petitioner believes he would have benefitted from the Court's review, he cannot demonstrate that he suffered any prejudice.

Moreover, the record of Petitioner's Plea and Rule 11 Hearing reflects his sworn representation that he understood that he expressly was waiving his right to appeal his conviction and/or sentence, and was expressly waiving his right to challenge his conviction and/or sentence in a post-conviction proceeding. The record also reflects counsel's declarations that the subject provision was explained to Petitioner and he understood it. Liewise, at sentencing the Court explained to the defendant that, in consideration for benefits he received for entering into a plea agreement, he waived his right to appeal his conviction and/or sentence on either direct appeal or

15

a collateral civil action, except for claims of ineffective assistance of counsel and prosecutorial misconduct. Therefore, Petitioner's claim that counsel was ineffective for having failed to ensure that the Court review the waiver provision with him is both factually and legally baseless.

### 3. Counsel's alleged ineffectiveness at sentencing

Petitioner's last claim against counsel is that he was ineffective at sentencing. Petitioner complains that counsel failed to "argue the full range of favorable factors necessary to persuade the [C]ourt in a possible event for a variance and/or downward departure, and failed to argue that his prior conviction for involuntary manslaughter is not a qualifying conviction for career offender purposes. (Doc. No. 1 at 7). In his Declaration, Petitioner further contends that counsel failed to focus the Court on the "numerous issues pertinent to [his] ultimate sentence and, partially, lead[] to the [C]ourt[']s determination of [his] qualification for 'career offender status' . . . ." (Id. at 15). Once again, however, Petitioner does not bother to point to what arguments he believes defense counsel should have raise, nor does he identify the "numerous issues" that he believes were pertinent to his sentence. Thus, this conclusory allegation can be rejected on that basis alone.

In addition, the Fourth Circuit long ago held that involuntary manslaughter can be used as a qualifying conviction under the career offender provision of the Sentencing Guidelines. In United States v. Payton, 28 F.3d 17 (4th Cir. 1994), the Fourth Circuit stated that because the Application Notes for the career offender provision of the Guidelines, § 4B1.2, expressly enumerates manslaughter as a qualifying crime of violence and "does not differentiate between involuntary and voluntary, we conclude that it includes both." Id. at 19. See United States v. Ensminger, 193 F. App'x 198, 199 (4th Cir. Aug. 2, 2006) (unpublished) (affirming this Court's reliance upon Payton to conclude that defendant's prior North Carolina state conviction for

involuntary manslaughter constitutes a crime of violence under U.S.S.G. § 4B1.2).  Therefore, counsel had no basis to argue that Petitioner's involuntary manslaughter was not a qualifying crime of violence.

Furthermore, even if the Court were to conclude that Petitioner's belated challenge to his career offender designation under United States v. Begay, 553 U.S. 137 (2008) is not time-barred,[1] the holding from that case still would not entitle him to any relief.  In Begay, the Court announced a test for determining whether a prior conviction qualifies as a violent felony or pertinent here, a crime of violence, when that conviction is not expressly enumerated as a qualifying conviction in the governing provision.  Id. at 143-45.  However, as previously was explained, manslaughter is expressly identified as a qualifying crime of violence by the application notes for the career offender provision.  Therefore, the rule announced in Payton, which case was not overruled by Begay, dictates that Petitioner's involuntary manslaughter conviction be used for career offender purposes.

In sum, Petitioner has failed to establish that counsel was ineffective for failing to challenge his career offender designation on the foregoing grounds.

**B.  Petitioner's substantive claim of sentencing error also is baseless**.

By his recent submissions, Petitioner seems to argue that in addition to the Court's improper reliance upon his involuntary manslaughter for career offender purposes, his State

---

[1]  Petitioner's claim under Begay was not raised in his Motion to Vacate.  Instead, Petitioner included this claim in his supplemental response to Respondent's Motion to Vacate which he filed September 7, 2010.  (Doc. No. 10).  However, Petitioner's conviction became final no later than 90 days after his appeal was dismissed, that is, on May 27, 2009; his one-year limitations deadline under the Anti-terrorism and Effective Death Penalty Act of 1996 expired May 27, 2010; and it is debatable whether this substantive claim of sentencing error can be construed as relating back to his timely filed claim that counsel was ineffective at sentencing for failing to challenge the use of his involuntary manslaughter conviction for career offender purposes.  Thus, it is likely that this Begay claim is time-barred.

conviction for assault inflicting serious injury also cannot be substituted for the manslaughter conviction. Therefore, Petitioner contends that his enhanced sentence must be vacated. However, this claim also is baseless.

The Court has determined that Petitioner's involuntary manslaughter conviction qualifies as crime of violence for career offender purposes; therefore, there is no need for the Court to resort to consideration of Petitioner's assault conviction. Moreover, while Petitioner's supporting documents reflect that he filed his State court challenge to the assault conviction in July 2009 and that the State court entered an order granting him an evidentiary hearing in April 2010, Petitioner's documents are silent regarding the outcome of that hearing. In fact, the subject documents do not indicate whether the hearing even has taken place. Suffice it to say, therefore, in the absence of a State court decision vacating Petitioner's felony assault conviction, this Court remains obligated to evaluate said conviction when deciding whether Petitioner qualifies as a career offender.

### C. Petitioner's claim of prosecutorial misconduct also fails.

By his final claim, Petitioner alleges that the prosecutor induced him to accept an overly burdensome plea agreement with extremely harsh terms, and he undermined Petitioner's appellate rights. However, the Court already has determined that Petitioner Plea Agreement was quite favorable to him; and that he failed to overcome the record evidence which establishes that he freely and voluntarily entered into that Agreement. Therefore, his claim that he was unlawfully induced into accepting an unfavorable Agreement must be flatly rejected. Moreover, in light of the fact that Fourth Circuit has concluded that the Government was entitled to a dismissal of Petitioner's appeal pursuant to the valid and enforceable waiver provision in the parties' Agreement, he is foreclosed for proceeding with his vague claim that the prosecutor

somehow undermined his appellate rights. See United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (the law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court"). Consequently, both of Petitioner's allegations of prosecutorial misconduct must be rejected.

## IV. CONCLUSION

As the foregoing discussion illustrates, Petitioner has failed to forecast evidence of a genuine issue of material fact which must be resolved. Likewise, Petitioner has failed to demonstrate an entitlement to relief by any of his claims. Accordingly, the Government's Motion for Summary Judgment will be granted, and Petitioner's Motion to Vacate will be denied and dismissed.

## V. ORDER

**IT IS, THEREFORE, ORDERED THAT:**

1. Respondent's Motion for Summary Judgment (Doc. No. 6) is **GRANTED**;

2. Petitioner's Motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Doc. No. 1) is **DENIED** and **DISMISSED**; and

3. Pursuant to Petitioner's request (Doc. No. 9), the Clerk is directed to refrain from sending a copy of this Order directly to Petitioner at his place of incarceration. Within thirty (30) days of the entry of this Order, the Court will enter an Order directing the Clerk to send this decision to a location designated by Petitioner.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made the necessary showings to support the issuance of the certificate as required under 28

19

U.S.C. § 2253(c). <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim for the denial of a constitutional right).

**SO ORDERED**.

Signed: December 22, 2010

Frank D. Whitney
United States District Judge

# United States District Court
# For The Western District of North Carolina
# Charlotte Division

Sterling Rafael Roseboro,

               Plaintiff(s),                     JUDGMENT IN A CIVIL CASE

vs.                                        3:09cv553

United States of America,

               Defendant(s).

DECISION BY COURT.  This action having come before the Court by motion and a decision having been rendered;

IT IS ORDERED AND ADJUDGED that Judgment is hereby entered in accordance with the Court's December 22, 2010 Order.

                              Signed: December 22, 2010

                              Frank G. Johns, Clerk
                              United States District Court